<table>
<tr><td>1</td><td colspan="2" align="center">UNITED STATES DISTRICT COURT</td></tr>
<tr><td>2</td><td colspan="2" align="center">DISTRICT OF PUERTO RICO</td></tr>
</table>

3
4

ALJADI LOPEZ, MARGIE TORRES-
MONTALVO, CONJUGAL
PARTNERSHIP LÓPEZ-TORRES,
ALJADIE LÓPEZ-TORRES,

      Plaintiffs,

      v.

PROGRAMA SEASONAL HEAD
START/ EARLY HEAD START DE LA
DIOCESIS DE MAYAGUEZ, INC.,
MYRNA CARRERO, BOARD OF
DIRECTORS OF PROGRAMA
SEASONAL HEAD START/ EARLY
HEAD START DE LA DIOCESIS DE
MAYAGUEZ, INC.,

      Defendants.

Civil No. 14-1713 (JAF)

5
6
                   **OPINION AND ORDER**

7       Plaintiffs Aljadi López-Rosario ("López"), Margie Torres-Montalvo ("Torres"),

8  Conjugal Partnership López-Torres, Aljadie López-Torres ("López-Torres") (collectively

9  "Plaintiffs") are suing defendants Programa Seasonal Head Start/Early Head Start de la

10  Diócesis de Mayaguez, Inc. ("Head Start"), Myrna Carrero ("Carrero"), and the Board of

11  Directors of Programa Seasonal Head Start/Early Head Start de la Diócesis de Mayaguez,

12  Inc. ("the Board") (collectively "Defendants").  Plaintiffs allege that Defendants illegally

13  discriminated on the basis of López's age.  (Docket No. 1.)  Defendants ask that we

14  dismiss the complaint.  (Docket No. 13.)  For the following reasons, we grant the motion

15  to dismiss, in part with prejudice and in part without prejudice.

1                                           **I.**

2                                      <u>**Background**</u>

3         When considering a motion to dismiss, we must construe the complaint in the

4    plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable

5    inferences in favor of the plaintiff.  *Rodríguez-Ramos v. Hernández-Gregorat*, 685 F.3d

6    34, 39-40 (1st Cir. 2010) (internal citations omitted).  Therefore, to the extent that any

7    facts are disputed, the facts set forth below represent Plaintiff's version.

8         In 2002, López began working as a driver and a handyman for Head Start, earning

9    $1,000 per month on an annually-renewed contract.  (Docket No. 1 at 3.)  By 2012, he

10   earned $1,256 per month.  (Docket No. 1 at 3.)  There were no problems with his work.

11   (Docket No. 1 at 3.)  His February 2013 contract guaranteed at least 40 hours of work per

12   week.  (Docket No. 1 at 3.)  However, on May 15, 2013, the Executive Director of Head

13   Start, Carrero, wrote López a letter stating that his hours were being reduced to twenty

14   hours per week due to a 5.25% budget cut.  (Docket No. 1 at 3.)  On May 30, 2013,

15   López's handyman duties were removed from his job description, and his pay was

16   reduced to $646 per month.  (Docket No. 1 at 4.)

17        On July 9, 2013, López requested reconsideration and a formal hearing on the

18   changes to his employment.[1]  On August 9, 2013, Head Start told López that his request

19   and complaint had been transferred to the Complaints Committee.  (Docket No. 1 at 4.)

20   On September 3, 2013, the Complaints Committee wrote a letter to López which affirmed

---

[1] López wrote the request to Carrero but also copied the President of the Council for Norms and Policy of Head Start, the President of the Board of Head Start, and the human resources officer.  (Docket No. 1 at 4.)

1   his revised employment conditions.  (Docket No. 1 at 4.)  The letter stated that if López

2   disagreed with said decision, he could write the Board[2] within five working days of

3   receiving notice of the decision.  (Docket No. 1 at 4-5.)  The letter was hand-delivered to

4   López on October 14, 2013.  On October 18, 2013, four days after receiving the letter,

5   López filed a written request for a hearing.  (Docket No. 1 at 5.)[3]

6         On October 30, 2013, the President of the Board of Head Start, Fr. Orlando Rosas

7   or Fr. Rosas Muñiz ("Rosas")[4] denied the appeal stating that it was time-barred.  The

8   letter was hand-delivered to López on December 11, 2013.  (Docket No. 1 at 5.)  On

9   December 16, 2013, López wrote to Rosas to argue that his appeal had not been time-

10  barred.  (Docket No. 1 at 6.)  A hearing was then held with only two board members in

11  attendance, including Rosas.  They did not discuss López's complaints.  (Docket No. 1 at

12  6.)  On February 28, 2014, López was given a new contract, which again guaranteed only

13  twenty hours of work per week, and which included a new clause stating that López

14  would hold harmless and waive any legal claim he may have against Head Start, the

15  Board, and Carrero.  López requested an extension of time to review the new contractual

16  language.  (Docket No. 1 at 6.)  On March 27, López received a letter, a check for his

17  accumulated vacations, and another check for his termination.  (Docket No. 1 at 7.)  On

---

[2] The Complaint actually says that López had the option to write the "Junta de Gobierno."  We assume that this means the Board rather than another governing body.  (Docket No. 1 at 4-5.)

[3] On October 28, 2013, the Complaints Committee wrote López another letter indicating that, if he was interested in filing a new complaint with new claims, he should provide specific details.  That letter was hand-delivered to López on December 11, 2013.  (Docket No. 1 at 5.)  It appears that López wished to pursue his previous claims rather than file new claims.

[4] The Plaintiff's motion refers to the president of the board as both "Fr. Orlando Rosas" and as "Fr. Rosas Muñiz."  Therefore, we refer to him as "Rosas."

1  April 7, 2014, López wrote Carrero to object that he was never given a reason for his

2  termination.  (Docket No. 1 at 7.)

3       During this process, Angel Ruiz ("Ruiz"), another handyman, continued in

4  Defendants' employ without a reduction in wages.  Ruiz was much younger than López

5  and carried out the same handyman duties that López had provided.  (Docket No. 1 at 7.)

6       On September 19, 2014, Plaintiffs filed a complaint in our court against

7  Defendants.  (Docket No. 1.)  Plaintiffs claim rights of action pursuant to "the Civil

8  Rights Act of 1991, as amended; the Age Discrimination Employment Act of 1967

9  (ADEA), as amended, 29 USC 621 et. seq.; 42 U.S.C.1983; 28 USC secs. 1331, 1343,

10  1357; 1367; 42 USC 1983 & 1985; 42 USCA §1981(a)."   (Docket No. 1 at 1.)

11  Defendants answered the complaint.  (Docket No. 6.)  On March 31, Defendants filed a

12  motion to dismiss.  (Docket No. 13.)  Plaintiffs responded and Defendants replied.

13  (Docket Nos. 18, 20.)

14                                      **II.**

15                              **<u>Legal Claims</u>**

16       As explained below, we must dismiss Plaintiffs' claims.  We lack jurisdiction over

17  the Age Discrimination in Employment Act (ADEA) claim.  Likewise, Plaintiffs fail to

18  state a claim under 42 U.S.C. §§ 1981 and 1985, and fail to show the state action

19  necessary for a claim under 42 U.S.C. § 1983.

20  **A.      <u>Age Discrimination in Employment Act (ADEA)</u>**

21       The Age Discrimination in Employment Act (ADEA) states that "No civil action

22  may be commenced by an individual under this section until 60 days after a charge

1    alleging unlawful discrimination has been filed with the Equal Employment Opportunity

2    Commission."   29 U.S.C. § 626(d)(1).   Plaintiffs did not attach a copy of an Equal

3    Employment Opportunity Commission (EEOC) filing with their complaint.   Nor did

4    either the Plaintiffs or the Defendants mention a filing before the EEOC in their briefs to

5    the court.   (*See* Docket Nos. 1, 13.)   Therefore, we lack jurisdiction to decide Plaintiffs'

6    claim under the ADEA.   They are dismissed without prejudice.

7    **B.    Title 42 Sections 1981 and 1985**

8          Title 42 U.S.C. § 1981 states that all persons shall have the same rights in every

9    state and territory to the equal benefit of the laws "as is enjoyed by white citizens," and

10   shall be subject to only similar punishment, taxes, and licenses as those white citizens.

11   42 U.S.C. § 1981.   This statute is inapplicable in this case.

12         Title 42 U.S.C. § 1985 prohibits conspiracies to interfere with civil rights,

13   including conspiracies to prevent a United States officer from performing his duties or

14   conspiracies to obstruct justice or to intimidate a party, witness or juror.   The statute also

15   prevents conspiracies to deprive persons of rights or privileges, such as when people

16   "conspire or go in disguise on the highway or on the premises of another" or conspiring

17   to prevent a citizen from voting.   42 U.S.C. § 1985.   This statute is also inapplicable in

18   this case.

19   **C.    Title 42 Section 1983**

20         Title 42 U.S.C. § 1983 states that "[e]very person who, under color of […law]

21   subjects or causes to be subjected, any citizen of the United States […] to the deprivation

22   of any rights, privileges, or immunities secured by the Constitution and the laws, shall be

Civil No. 14-1713 (JAF)                                                                          -6-

1    liable to the party injured…" 42 U.S.C. § 1983.  To act under color of state law, the

2    defendant must have "acted under pretense of law."  *Parilla-Burgos v. Hernandez-*

3    *Rivera*, 108 F.3d 445, 449 (1st Cir. 1997) (internal citations omitted).  "This happens

4    when "an individual imbued with official authority purports to exercise that authority

5    when actually acting wholly outside of it."  *Id.* at 449.  However, "there can be no

6    pretense if the challenged conduct is not related in some meaningful way either to the

7    officer's governmental status or to the performance of his duties."  *Martinez v. Colón*, 54

8    F.3d 980, 987 (1st Cir. 1995).  Defendants argue that they are not state actors.  (Docket

9    No. 13 at 5-7.)

10         According to Plaintiffs' Complaint, Head Start is a "a not for profit corporation

11   which receives and administers federal funds for the operation of a Head Start Program;"

12   and it was

13                   set up by the Dioceses of Mayaguez as a not-for-profit
14                   corporation under the Law of Corporations of Puerto Rico,
15                   with the intent of receiving federal funds to administer a Head
16                   Start program which operates in various municipalities of the
17                   west coast of Puerto Rico and by complying with all federal
18                   statutes therein.
19
20   (Docket No. 1 at 2-3.)  Carrero was the Executive Director of Head Start; and the Board

21   was the "decision making body of [Head Start] and the ultimate overall decision maker."

22   (Docket No. 1 at 2.)

23         As the First Circuit has stated, courts have deemed a private entity to be a state

24   actor if "(1) it assumes a traditional public function when it undertakes to perform the

25   challenged conduct, or (2) an elaborate financial or regulatory nexus ties the challenged

1    conduct to the State, *or* (3) a symbiotic relationship exists between the private entity and

2    the State." *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999).

3          Under the first test– the traditional public function – a court means to "flush out a

4    State's attempt to evade its responsibilities by delegating them to private entities," so a

5    plaintiff "must show that the function is one *exclusively* reserved to the state." *Perkins*,

6    196 F.3d at 118-19 (emphasis in original).  Courts have found few activities that satisfy

7    this demanding standard, but those include "the administration of elections, the operation

8    of a company town, eminent domain, peremptory challenges in jury selection, and, in at

9    least limited circumstances, the operation of a municipal park." *Perkins*, 196 F.3d at 19

10   (internal citation omitted).  However, "the education of maladjusted high-school students

11   was not an exclusive function of the State and therefore was not an inherently

12   governmental function." *Perkins*, 196 F.3d at 19, citing to *Rendell-Baker v. Kohn*, 457

13   U.S. 830, 842 (1982).   If the education of troubled teenagers is not an inherently

14   governmental function, then neither are programs to promote the school readiness of low-

15   income children.  *See* 42 U.S.C. § 9831.  We find that Defendants were not engaged in a

16   traditional public function.

17         Under the second test – the elaborate financial or regulatory nexus – a plaintiff

18   must show a "close nexus between the State and the challenged action of the [private]

19   entity so that the action of the latter may be fairly treated as that of the State itself."

20   *Perkins*, 196 F at 19 (internal citation omitted).  The plaintiff must show that the State

21   coerced the entity or provided significant encouragement, and this must be shown in

22   regards to the challenged conduct itself, not the broader relationship.  *Perkins*, 196 F.3d

1   at 19-20 (internal citations omitted).  However, a private entity's "receipt of public funds

2   does not make the [employment] decisions acts of the State,"  and acts of private

3   contractors "do not become acts of the government by reason of their significant or even

4   total engagement in performing public contracts."  *Rendell-Baker*, 457 at 840-41.

5   Although Plaintiffs argue that Head Start complies with all applicable federal statutes,

6   there are no allegations that state regulations influenced their personnel decisions.  (*See*

7   *Rendell-Baker*, 457 at 841; Docket No. 1.)  Therefore, we find that there is no elaborate

8   financial or regulatory nexus between the state and the Defendants.

9          Under the third test – symbiosis – a plaintiff must show that the government "has

10   so far insinuated itself into a position of interdependence with the [private entity] that it

11   must be recognized as a joint participant in the challenged activity."  *Perkins*, 196 F.3d at

12   21 (internal citation omitted).  In contrast to the nexus test, this inquiry looks at the

13   overall relationship between the State and the private entity.  *Perkins*, 196 F.3d at 21.

14   The most salient factor is "the extent to which the private entity is (or is not) independent

15   in the conduct of its day-to-day affairs."  *Perkins*, 196 F.3d at 21.  There is not a

16   symbiotic relationship when the private entity's fiscal relationship with the State is

17   merely similar to "that of many contractors performing services for the government."

18   *Rendell-Baker*, 457 U.S. at 843.[5]  A non-profit school can be almost fully paid for by

_____

[5] The Supreme Court did find symbiosis in the case of a not-for-profit athletic association, where the association's staff members were eligible to join the State's public retirement system for employees; the association enjoyed "the school's moneymaking capacity as its own;" and State Board members were assigned to serve as members of the board of the Association.  *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 228 (2001).  The present case does not approach that level of symbiosis.  The most similar case is *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), in which the Supreme Court failed to find state action.  There, a non-profit school was located on private property and was

1   public funds without a symbiotic relationship when it was also located on private

2   property and operated by a private board of directors.  *Rendell-Baker v. Kohn*, 457 U.S.

3   830 (1982).  Here, other than receiving federal funds and complying with the applicable

4   federal statutes, there are no allegations that that the government is so interdependent

5   with Head Start that it must be recognized as a joint participant in all Head Start's

6   employment decisions.

7          Having examined this relationship under all three tests, we find that there is no

8   state action.  Therefore, the Plaintiffs do not have a claim under § 1983.

9   **D.      Supplemental claims**

10          We have discretion to decline supplemental jurisdiction over the remaining

11  Commonwealth claims, since we have dismissed all of the claims over which we have

12  original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*,

13  383 U.S. 715 715, 726 (1966) ("if the federal law claims are dismissed before trial…the

14  state claims should be dismissed as well.")  In exercising our discretion under § 1367(c),

15  we must consider the issues of "judicial economy, convenience, fairness, and comity."

16  *Che v. Massachusetts Bay Transp. Authority*, 342 F.3d 31, 37 (1st Cir. 2003).  Having

17  considered these factors, and in light of the record, we decline to exercise supplemental

18  jurisdiction over Plaintiffs' Commonwealth law claims and we dismiss them without

19  prejudice of local court litigation.

20

---

operated by a private board of directors, none of whom were public officials and none of whom were
chosen by public officials.  Nearly all the students were referred by the city's school committees or by the
Massachusetts Department of Mental Health, which meant that public funds accounted for 90 to 99% of
the school's operating budget.  *Rendell-Baker*, 457 U.S. at 831-32.

Civil No. 14-1713 (JAF)                                                    -10-

1                                        **III.**

2                                   **<u>Conclusion</u>**

3          For the foregoing reasons, Defendants' motion to dismiss (Docket No. 13) is

4    **GRANTED**.    Plaintiffs' federal law claims under the ADEA are **DISMISSED**

5    **WITHOUT PREJUDICE**, and Plaintiffs' remaining federal law claims are

6    **DISMISSED WITH PREJUDICE**.    Plaintiffs' Commonwealth law claims are

7    **DISMISSED WITHOUT PREJUDICE OF LOCAL COURT LITIGATION**.

8          **IT IS SO ORDERED.**

9          San Juan, Puerto Rico, this 29th day of May, 2015.

10                                        <u>S/José Antonio Fusté</u>
11                                        JOSE ANTONIO FUSTE
12                                        U. S. DISTRICT JUDGE