IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALJADI LOPEZ-ROSARIO, *et al.*,

**Plaintiffs,**

v.

PROGRAMA SEASONAL HEAD
START/EARLY HEAD START DE LA
DIOCESIS DE MAYAGUEZ, *et al.*,

**Defendants.**

Civil No. 14-1713 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Aljadi Lopez-Rosario ("Lopez-Rosario"), with his wife and son, brought suit against his former employer, Programa Seasonal Head Start/Early Head Start de la Diocesis de Mayagüez ("Programa"); its board of directors; and its executive director (collectively "Programa Defendants") alleging that they took negative employment action against him in violation of the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 *et seq.*, 42 U.S.C. §§ 1981, 1983, and 1985, and several Puerto Rico statutes. (Docket No. 1.) The Court granted the Programa's motion to dismiss, terminating the case, (Docket Nos. 21, 22), but reconsidered its decision and reopened the case to allow Lopez-Rosario's ADEA and Puerto Rico law claims to proceed, (Docket

No. 30).[1]  Before the Court is the Programa defendants' motion for summary judgment, (Docket No. 46), plaintiffs' opposition, (Docket No. 54), and the Programa defendants' reply, (Docket No. 62).  For the reasons below, the Court **GRANTS** the Programa defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  <u>Tobin v. Fed. Exp. Corp.</u>, 775 F.3d 448, 450 (1st Cir. 2014) (quoIting <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  Viewing the facts in the light most favorable to the nonmoving party, but disregarding unsupported and conclusory allegations, <u>McGrath v. Tavares</u>, 757 F.3d 20, 25 (1st Cir. 2014), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law."  <u>Miranda-Rivera v. Toledo-Davila</u>,

---

[1] The Court affirmed its decision to dismiss plaintiffs' federal, non-ADEA claims because "[t]he ADEA provides the exclusive federal remedy for age discrimination in employment."  (Docket No. 30 at p. 10 (quoting <u>Tapia-Tapia v. Potter</u>, 322 F.3d 742, 745 (1st Cir. 2003)).

813 F.3d 64, 69 (1st Cir. 2016); see also Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (stating that a "material" issue of fact is one that "needs to be resolved before the related legal issue can be decided"). A dispute is "genuine" when it "could be resolved in favor of either party." Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 782 (1st Cir. 2014).

The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Campos v. Van Ness, 711 F.3d 243, 247 (1st Cir. 2013). The party must demonstrate this absence with definite and competent evidence. See Maldonado-Denis, 23 F.3d at 581 (citing Mesnick v. Gen. Elec. Co., 950 F. 2d 816, 822 (1st Cir. 1991)). It must identify "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials" which support its motion. Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Once a properly supported motion has been presented, the burden shifts to the nonmoving party "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she can thwart summary

judgment only by identifying competent evidence in the record sufficient to create a jury question."   Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450-51 (1st Cir. 2014).

## BACKGROUND

### A.   The Programa

The Programa is a not-for-profit corporation incorporated in Puerto Rico, (Docket No. 60-37), with its main office in Hormigueros, Puerto Rico, (Docket No. 70-33 at p. 2).   The Diocesis of the Catholic Church of Mayagüez organizes and directs the Programa and the Bishop of Mayagüez is the president of the Board of Trustees.   (Docket No. 73-33 at p. 4.) The Board of Directors and Council for Regulation Policy, both governing board of directorsies, manage the Programa.   (Docket Nos. 60-2 at p. 7; 73-33 at pp. 4-7; 73-34 at p. 2.)   Carrero is the executive director of the Programa. (Docket No. 60-3 at p. 2.)

The Programa receives federal funds and uses them to operate "Head Start Program" pre-school care centers.   (Docket Nos. 60-3 at p. 3; 60-34 at pp. 2-4.) In fiscal year 2009-2010, the Programa received more federal funding than usual, in the amount of $1.5 million, which was used for payroll, recruitment of new employees, and other purposes.   (Docket Nos. 55-3 at p. 5; 55-4 at pp. 4-5; 55-5 at p. 3.)   In fiscal year 2012-2013, the Programa's budget was $3.8 million.   (Docket No. 55-4 at p. 4.)   In 2013, The

Programa closed a center in Maricao, which reduced the Programa's spending for that year and led to the relocation of employees. (Docket No. 55-5 at pp. 12-13.)   The Programa opened a new center in Hormigueros in 2015.  (Docket No. 55-4 at p. 2.)   The Programa also opened centers in Cabo Rojo and Lajas and hired fifty new employees.   (Docket No. 55-4 at p. 5.)   In 2015, the Programa administered one care center in each of five municipalities on the West Coast of Puerto Rico – San German, Lajas, Las Marias, Añasco, and Cabo Rojo.  (Docket No. 60-35 at p. 9.)

**B.    Lopez-Rosario's Employment with the Programa**

Lopez-Rosario was born on March 26, 1963. (Docket No. 60-3 at p. 2.)  The Programa hired Lopez-Rosario in 2002.  (Docket No. 60-3 at p. 5.)  Lopez-Rosario signed two employment contracts, one in 2002 and another in 2007, both for the position of driver/handyman.  (Docket Nos. 73-35 at p. 1; 73-36 at p. 1.)  The 2007 contract states that the "[Programa]is not obligated to renew this agreement annually with [Lopez-Rosario] if . . . [there is an i]nsufficiency of Federal funds to continue paying for the position and salary."  (Docket No. 73-36 at p. 2.)  Lopez-Rosario performed duties of a driver and of a handyman. (Docket No. 55-5 at p. 7.) Also, each year, Lopez-Rosario signed a Change Report for Personnel Transactions, which listed his position as driver/handyman. (Docket No. 73-37.)

During his employment, Lopez-Rosario received written warnings. First, in June 2011, Lopez-Rosario received a warning emphasizing the importance of maintaining an accurate time-log. (Docket No. 73-31 at pp. 16-17.)  In August 2011, he received a letter about the same behavior on three separate occasions.  Id. at p. 15.  Next, he received three letters, a labor performance warning, and an incident report for failing to turn in maintenance reports in November 2011.  Id. at pp. 9-14.  He received another incident report for failing to attend a training in September 2012. Id. at p. 8.  Finally, he received three incident reports for failing to attend a mandatory recreational activity on November 29, 2012.  Id. at pp. 2-7.  Carrero told Lopez-Rosario that he was "no longer useful as a handyman anymore." (Docket No. 55-2 at pp. 6-7.)

## C.  Other Employees

The Promgrama also employed Harry Muñoz ("Muñoz") as a driver/handyman until he left in June 2013. (Docket Nos. 44 at p. 5; 55 at p. 3.)  Muñoz is likely over fifty years old. (Docket No. 55-2 at p. 9.)  Additionally, the Programa employs Angel Ruiz ("Ruiz") as a handyman. (Docket No. 55-5 at p. 8.)  Ruiz is younger than Lopez-Rosario and had less years of service than he. (Docket No. 55-3 at p. 3.)  Ruiz, who is "around his 40s" in age,

works full-time and is still employed by the Programa. (Docket Nos. 55-2 at p. 9; 55-3 at p. 3.)

The driver/handyman and handyman positions are listed in the Programa's roster as separate positions. (Docket Nos. 44 at pp. 5-6; 55 at p. 3; 73-18; 73-19.) The positions share several requirements, descriptions, minimum skills, and definitions, but also have several differences. Compare Docket No. 73-18, with Docket No. 73-19. The handyman position requires the employee to have basic knowledge and skills of general repairs, carpentry, masonry, plumbing, electricity, and basic maintenance tools. (Docket No. 73-19 at pp. 1-2.) Both positions require the employee to inspect and identify items requiring maintenance or repair and to participate and collaborate to correct any deficiency. (Docket Nos. 73-18 at pp. 7-8; 73-19 at p. 2.) The driver/handyman position also requires training, licensing, and experience driving heavy or passenger transportation vehicles in order to perform the additional task of transporting the Programa students and family members. (Docket No. 73-18 at pp. 1-3.)

**D.   Reduction of Federal Funds and Budget Cuts**

In early March 2013, the Programa received a letter from the National Head Start Office Director informing it that due to a "sequester" of federal funds, the Programa would need to reduce its budget by 5.27%. (Docket Nos. 73-3 at pp. 1-2; 60-35 at p.

3; 60-10 at p. 1.)  In response, in late March 2013, the board of directors convened an austerity committee and adopted its recommendations on how to cut expenses, including transportation service expenses.  See Docket Nos. 73-4; 73-5 at p. 2; 73-6 at p. 3.  On April 9, 2013, the Programa issued a memorandum outlining the actions it planned to take in order to reduce the operational budget in response to the sequestration of funds.  See Docket No. 60-8 at pp. 1-2.  In that memorandum, the Programa established its plans to:

- Interrupt the contractual relationship with the renter of the storage facilities in San German from the month of June to the present[]

- Reduce by 15% all the corresponding utilities (materials, equipment purchases, electricity, water, gas, etc.) (immediately)

- Reduce hours for personnel that work through Professional Service Contracts such as Phycologist [*sic*], Speech Therapist, Occupational Therapist and others (immediately)

- Reduce all the services in regard to transportation (May 2013)

- Modify the payment of travel expenses (May 2013)

- Adjust the schedule of service for children to making adjustments in the substitutions (June 2013)

- Adjust the amount of the Christmas bonus to all employees (December 2013)

Id. at p. 2.  The Programa's budget was the same for fiscal year 2013 and 2014.  (Docket Nos. 44 at p. 11; 55 at p. 12.)  Of the

Programa's $3.8 million budget, the austerity measures saved approximately $150,000. (Docket No. 55-4 at p. 27.)

## E.   Reduction in Lopez's Hours

In May 2013, Carrero informed Lopez-Rosario that, due to the 5.27% budget cut, his working hours would be reduced to four hours per day with a daily schedule of 6:00-8:00 a.m. and 1:30-3:30 p.m. on weekdays. (Docket Nos. 73-10; 73-11.) Additionally, an unsigned Change Report for Personnel Transactions indicated that his pay would be reduced from $1,216 to $645 and that his position was reclassified from driver/handyman to driver. See Docket Nos. 73-13; 55-4 at pp. 17-18. The other driver/handyman, Muñoz, received a similar letter informing him that his hours would also be reduced to four hours each weekday. (Docket Nos. 73-38, 73-39.)

Lopez-Rosario was maintained as a "regular" employee despite this reduction in hours. See Docket No. 60-15. At the meeting where the Programa notified Lopez-Rosario of the reduction in work hours and the new assignment of tasks, Lopez-Rosario objected to the changes and contacted his attorney. (Docket No. 60-13.)

In June 2013, Lopez-Rosario's attorney sent a letter to Carrero requesting that the Programa reconsider its decision to reduce Lopez-Rosario's hours and requesting a meeting to discuss the matter. (Docket No. 60-46.) Subsequently, the parties

participated in the Programa's grievance process through correspondence and meetings. See generally Docket Nos. 73-14; 73-15; 73-16; 73-20; 73-21; 73-22; 73-23; 73-24; 73-25; 73-26; 73-41; 73-42; 73-43.

## F.   February 2014 Events

On February 27, 2014, the Programa gave an orientation to its employees regarding employment contracts for the new fiscal year. (Docket No. 73-27.)  All employees were asked to sign their new contracts on February 28, 2014.  (Docket Nos. 60-2 at p. 18; 60-35 at pp. 7-8.)  Some employees signed their contracts after February 28, 2014.  (Docket Nos. 55-1 at p. 8; 60-35 at p. 8.) The provisions of all of the employees contracts were the same, except that Lopez-Rosario's hours were reduced to twenty per week. (Docket Nos. 60-1; 60-53 at p. 2.)

The contract presented to Lopez-Rosario on February 28, 2014 indicated that he would continue to work twenty hours per week. (Docket Nos. 44 at p. 22; 55 at p. 12.)  Lopez-Rosario did not sign the draft of the 2014 employment contract presented to him on February 28, 2014.  (Docket Nos. 73-28 at p. 4; 60-35 at p. 7; 60-53 at p. 2.)  He disagreed with the provision that continued his employment at twenty hours per week.  (Docket Nos. 60-35 at pp. 7-8; 60-53 at p. 2.)  He discussed his decision not to sign the new contract with Carrero.  (Docket No. 60-2 at pp. 16-18.)

**G.   The Aftermath**

Following the events of February 2014, the Programa sent Lopez-Rosario checks with liquidation payments of his remaining vacation leave, which Lopez did not cash.  (Docket Nos. 73-29; 73-3; 60-3 at p. 24.)   The Programa did not hire any employee to replace Lopez-Rosario as driver/handyman.  (Docket No. 60-35 at pp. 4-6.)  The Program no longer employs driver/handymen nor does it provide transportation for its participants.  (Docket Nos. 60-2 at p. 12; 60-35 at pp. 4-6, 10.)

On April 23, 2014, Lopez-Rosario filed a discrimination charge with the Puerto Rico Department of Labor and Human Resources Antidiscrimination   Unit   ("ADU").     (Docket   No.   73-44.) Thereafter, the EEOC issued a "Right to Sue" letter to Lopez-Rosario.  (Docket No. 60-52.)

## DISCUSSION

**I.   ADEA Claim – Threshold Issues**

Lopez-Rosario[2] seeks relief pursuant to the ADEA.  (Docket No. 1.)  The ADEA makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual or otherwise

---

[2] Lopez-Rosario's wife and son do not have standing pursuant to the ADEA because they are not employees for purposes of the statute.  See Vicenty-Martell v. Estado Libre Asociado de P.R., 48 F. Supp. 2d 81, 92-93 (D.P.R. 1999) (Casellas, J.).  They may, however, be eligible for relief pursuant to the laws of Puerto Rico.  See infra Part III.

discriminate against any <sup>individual</sup> with respect to his compensation,
terms, conditions, or privileges of employment, because of such
individual's age."  29 U.S.C. § 623(a)(1).  "In order to prevail
in a lawsuit under the ADEA, the plaintiff's age must actually
have played a role in the employer's decision-making process and
have had a determinative or motivating influence on the outcome."
Diaz-Figueroa v. Ricoh P.R., Inc., 661 F. Supp. 2d 140, 153 (D.P.R.
2009) (Pieras, J.) (citing Reeves v. Sanderson Plumbing Prods.,
Inc., 530 U.S. 133, 141 (2000); Hoffman v. Applicators Sales &
Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006)).

The Programa defendants move for summary judgment arguing
that Lopez-Rosario was not constructively discharged or treated
differently than other employees, but rather, that Lopez-Rosario
and all other employees were affected by a decrease in federal
funding to the Programa.  (Docket No. 46 at pp. 1-2, 10-22.)
Before addressing the substantive ADEA claims and arguments, the
Court must first resolve three threshold issues raised by the
Programa defendants:  1) whether plaintiffs exhausted their
administrative remedies regarding the board of directors and
Carrero, 2) whether the board of directors is a legal "person"
that can be sued, and 3) whether the board of directors and Carrero
classify as "employers" pursuant to ADEA.  Id. at pp. 2, 24-26.

### A.   Administrative Exhaustion

The first threshold issue is whether Lopez-Rosario failed to exhaust administratively his claims against the board of directors and Carrera[3] when he did not list them by name in the "name of employer" section of his administrative charge. (Docket No. 45 at pp. 24-25.)

Federal civil actions for discrimination pursuant to the ADEA may not be commenced without first exhausting administrative remedies, such as the requirement to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful practice.[4]   Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 78 n.14 (1st Cir. 2005) (citing Am. Airlines, Inc. v. Cardoza- Rodriguez, 133 F.3d 111, 122 (1st Cir. 1998) ("In 'deferral states' . . . such as Puerto Rico, employees must file charges of unlawful age discrimination

---

[3] Neither party argued that plaintiffs failed to exhaust their administrative remedies as to the Programa.   See Docket No. 30 at p. 10.

[4] Because the requirement to file with the EEOC within 300 days is not a jurisdictional issue, it is subject to waiver.   Martinez-Rivera v. Puerto Rico., 812 F.3d 69, 77 (1st Cir. 2016) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-94 (1982)); Watlington v. Univ. of P.R., 751 F. Supp. 318, 323 (D.P.R. 1990) (applying this rule to the ADEA filing timeline in Puerto Rico). Although the reduction in plaintiff's hours occurred in May 2013 and the 300 day window based on the filing date of the ADU complaint is June 28, 2013 to April 23, 2014, neither party argued that the ADU complaint was filed untimely. Thus, this argument is waived.

in employment with the EEOC within 300 days 'after the alleged unlawful practice occurred.'")); see also 29 U.S.C. § 626(d).  Due to a reciprocity provision in the workshare agreement between the EEOC and the Puerto Rico Antidiscrimination Unit ("ADU"), filing a timely charge with the ADU satisfies the ADEA filing requirement to file with the EEOC.  See Rivera-Rivera v. Thyssenkrupp Elevator Corp., Civ. No. 14-1478, 2015 WL 5719799, at *2 (D.P.R. Sept. 29, 2015) (Casellas, J.) ("This reciprocity provision essentially means that any charge filed with one agency is considered, as a matter of law, to have been received by the other.")  Here, plaintiff Lopez-Rosario filed his charge pertaining to the events of February 28, 2014 with the ADU on April 25, 2014.  (Docket No. 73-44 at p. 1.)

The filing lists the Programa[5] in the "name of employer" section, but later mentions "Ms. Myrna Carrero" by name in the section describing the allegedly discriminatory action.  (Docket No. 73-44 at p. 1.)  Generally, a party must be named in the EEOC administrative charge to be subject to suit pursuant to the ADEA.  Miranda v. Deloitte LLP, 922 F. Supp. 2d 210, 221 (D.P.R. 2013) (Besosa, J.) (citing 42 U.S.C. § 2000e-5(f); McKinnon v. Kwong Wah

---

[5] Specifically, it lists the "Centro de Desarollo Familiar Seasonal Head State/EHS Diocesis de Mayagüez, Inc."  (Docket No. 60-51 at p. 1.)

Rest., 83 F.3d 498, 504 (1st Cir. 1996)).  "An exception exists,
however, when there is a 'substantial identity' between a party
named in the EEOC charges and a defendant in the civil action."
Id.  In Miranda, the First Circuit Court of Appeals applied a
four-prong test developed in Glus v. G. C. Murphy Co., 562 F.2d
880, 888 (3d Cir. 1977) and concluded that "substantial identity"
existed among the defendants because "notice to one will reach the
other and no prejudice will result from naming one party but not
the other."  Miranda, 922 F. Supp. 2d at 223.

     Here, as in Miranda, the mention of Carrera in the
narrative section of the charge is sufficient to put her on notice.
See Miranda, 922 F. Supp. 2d at 222 ("Filed as part of the
administrative charge, the Narrative is a written factual
statement that should have alerted the employer and all parties
named in it of the pending proceedings and investigation."
(internal citations omitted)).

     Also, similar to the different divisions of the
plaintiff's employer in Miranda, the Programa's board of directors
is an "integrated entity" to the extent that notice to the Programa
will reach the board of directors and no prejudice arises from not
naming the board of directors in the charge.  See id. at 221-22.
Thus, the board of directors, although not named in the EEOC
charge, shares a "substantial identity" with the Programa, who is

named in the EEOC charge.  Accordingly, the Court finds that Lopez-Rosario did exhaust his administrative remedies regarding defendants board of directors and Carrero.  The Court declines to dismiss these defendants for lack of administrative exhaustion.

> ### B.    The Board of Directors as a Legal Entity

The Programa defendants next argue that the claims against the board of directors should be dismissed because it is not a legal person, and thus, cannot be sued.  (Docket No. 46. at pp. 2, 25-26.)  Pursuant to Federal Rule of Civil Procedure 17(b), a corporation can sue or be sued based on "the law under which it was organized."  Fed.R.Civ.P. 17(b).  The Programa is incorporated pursuant to Puerto Rico law.  (Docket No. 60-37.)

A board of directors "is not a legal entity separate and apart from the corporation it directs . . . and, thus, lacks capacity to be sued under Fed. R. Civ. P. 17(b)."  Heslep v. Ams. for African Adoption, Inc., 890 F. Supp. 2d 671, 679 (N.D.W. Va. 2012); see also Jules Inc. v. Boggs, 270 S.E.2d 679, 683 (W. Va. 1980) ("The corporate entity does not exist separate from its board of directors, its officers and its stockholders, for they are the ones who formulate the actions of the corporation."); cf. Palazzo v. Gulf Oil Corp., 764 F.2d 1381 (11th Cir. 1985); In re Colony Place Co., No. 188-00819, 1989 WL 1113444, at *2 (Bankr. S.D. Ga.

Feb. 28, 1989).[6]  Accordingly, the Court finds that a suit against the BOARD OF DIRECTORS is a suit against the corporation, the Programa.   Thus, the ADEA claims against the BOARD OF DIRECTORS are **DISMISSED** as redundant with the ADEA claims against the Programa.

### C.   ADEA Employers

Finally, the Programa defendants argue that the claims against Carrero and the board of directors[7] should be dismissed because neither qualifies as an "employer" pursuant to the definitions in the ADEA.  (Docket No. 46. at pp. 2, 26.) The ADEA defines an "employer" as:

> "[One or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons] engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [or] any agent of such [individuals, partnerships, etc.] . . . ."[8]

29 U.S.C. § 630(b).

---

[6] The Court looks to caselaw from other courts because the issue of a suit against a board of directors, as opposed to against individual directors or the corporation, is not common.

[7] Having already dismissed the claims against the board of directors, the Court limits its analysis to the status of Carrero as an "employer."

[8] Employer also includes some specified state or political subdivisions not relevant here.

The First Circuit Court of Appeals has adopted the Fourth Circuit Court of Appeals' majority approach to the issue of individual liability for discriminatory employment practices. Fantini v. Salem State College, 557 F.3d 22, 29-30 (1st Cir. 2009) (applying the Fourth Circuit Court of Appeals' ADEA analysis to Title VII claims). In Birkbeck v. Marvel Lighting Corp., the Fourth Circuit Court of Appeals read the inclusion of "any agent of such" in the ADEA's definition of "employer" to be "an unremarkable expression of *respondeat superior*." 30 F.3d 507, 510 (4th Cir. 1994). The Court held that employees are not individually liable pursuant to the ADEA and that finding otherwise would "be incongruous to" Congress's decision "to protect small entities with limited resources from liability." Id. (quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993)). Pursuant to this line of reasoning, Carrero, a Programa employee, cannot be held individually liable for violations of the ADEA.

The First Circuit Court of Appeals, however, has created a narrow exception to the general rule against employees' individual liability for "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period

of nonpayment." Chao v. Hotel Oasis, Inc., 493 F.3d 26, 33-34 (1st Cir. 2007) (quoting Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983)). Here, nothing in the record indicates that Carrero has a "significant ownership interest" in the corporation or that she had "ultimate" or "sufficient" control over corporate matters, *i.e.* beyond the level of control of an ordinary supervisor. See Chao, 493 F.3d at 34 (finding corporation's president could be held individually liable because he had "ultimate control" over corporation's day-to-day operations; Miranda, 922 F. Supp. 2d at 219-20 (finding that the narrow exception applied to directors and managing partner of corporation who held "sufficient control over [corporation's] day-to-day operations [and] financial affairs"). In keeping with the First Circuit Court of Appeal's concern that this exception be narrow because "not every corporate employee who exercised supervisory control should be held personally liable," Chao, 493 F.3d at 34, the Court finds that this exception does not apply to Carrero. Instead, she remains exempt for individual liability pursuant to the general ADEA rule against individual liability established in Birkbeck and Fantini. Accordingly, the ADEA claims against Carrero are **DISMISSED**.

## II.  ADEA Claim – Burden Shifting

Having resolved the Programa defendants' threshold issues, the Court addresses the substance of their ADEA arguments.  A plaintiff alleging an adverse employment action in an ADEA case has the burden of proving, through direct or indirect evidence, that age was the "but-for" cause of the challenged action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009).  When the plaintiff relies on only indirect evidence of discrimination, as here,[9] the First Circuit Court of Appeals applies the familiar, three-stage, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Del Valle-Santana v. Servicios Legales De P.R., Inc., 804 F.3d 127, 130 (1st Cir. 2015); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429-30 (1st Cir. 2000).

---

[9] Plaintiffs argue that there is "ample direct evidence of discrimination," Docket No. 54 at p. 8, but present none.  "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990) (internal citations and quotations omitted) "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." Id.  "One example of direct evidence would be a management memorandum saying, 'Fire [employee]—he is too old.'" Id.  "But the evidence at issue here, at most, suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence; by definition then, the evidence is circumstantial." Id.

First, if a plaintiff establishes the four prongs of a *prima facie* age discrimination claim pursuant to ADEA, he creates a rebuttal presumption of discrimination.  Hidalgo v. Overseas Condado Ins. Agencies, 120 F.3d 328, 334-35 (1st Cir. 1997).  Next, to overcome the rebuttable presumption that age discrimination occurred, an employer must produce a legitimate nondiscriminatory reason for the employment action.  Hoffman v. Applicators Sales & Servs., Inc., 439 F.3d 9, 17 (1st Cir. 2006).  Finally, the plaintiff may prove that the employer's legitimate nondiscriminatory reason was pretext and that age was the true motivating factor for the adverse employment action.  Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015).

Defendant[10] Programa argues that plaintiffs' claims should be dismissed because 1) plaintiff Lopez-Rosario fails to establish a *prima facie* case of age discrimination, 2) defendant Programa offers a legitimate nondiscriminatory reason for its actions, and 3) plaintiff Lopez-Rosario fails to establish that defendant Programa's legitimate nondiscriminatory reason is merely pretext for a discriminatory action.  (Docket No. 46 at pp. 10-19.)

---

[10] Having dismissed Carrera and the board of directors, the Programa is the only remaining defendant.  Thus, the Court analyzes only the ADEA claim against the Programa.

**A.    *Prima Facie* Case of Age Discrimination**

To begin, a plaintiff must make out a *prima facie* case
of age discrimination by establishing (1) that he was at least
forty years old at the time of the challenged action; (2) that his
work met his employer's legitimate expectations; (3) that his
employer took adverse action against him; and (4) that his employer
did not treat age neutrally in taking the adverse action.  Del
Valle-Santana v. Servicios Legales De P.R., Inc., 804 F.3d 127,
129-30 (1st Cir. 2015) (citing Brennan v. GTE Gov't Sys. Corp.,
150 F.3d 21, 26 (1st Cir. 1998)).  Establishing a *prima facie* case
does not present an onerous burden on a plaintiff, Currier v.
United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004) (citing
Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000)),
but "the plaintiff is still required to prove the *prima facie*
elements by a 'preponderance of the evidence.'"  Del Valle-Santana
v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 131 (1st
Cir. 2015) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450
U.S. 248, 253 (1981)).

Here, defendant Programa concedes that plaintiff Lopez-
Rosario was over forty years of age at the time of the challenged
action and that he suffered an adverse employment action of a
decrease in hours.  (Docket No. 46 at p. 15.)

### 1.   Adverse Employment Action

Plaintiff Lopez-Rosario agrees that the decrease in his hours and accompanying title change and pay decrease was a negative employment action, (Docket No. 54 at pp. 14-15), but argues that he suffered another negative employment action – constructive discharge, id. at 13. Lopez-Rosario argues that Carrero's discriminatory comments and the Programa's treatment of him during the internal grievance process left him with no choice but to leave the company. Id. at 10-14.

"Adverse employment action, for purposes of the ADEA, includes actual or constructive discharge." Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008). For a constructive discharge claim in violation of the ADEA, a plaintiff must show that "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 12 (1st Cir. 2007) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)). "The standard is an objective one; an employee's subjective perceptions do not govern." Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003)(citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002)). The United States Court of Appeals for the

First Circuit has established clearly that "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Diaz-Figueroa v. Ricoh P.R., Inc., 661 F. Supp. 2d 140, 152 (D.P.R. 2009) (Pieras, J.) (quoting Gu v. Bos. Police Dept., 312 F.3d 6, 14 (1st Cir. 2002)).

### a.   Carrero's Comments

Regarding the alleged comments, for a constructive discharge claim, the United States Supreme Court requires a showing beyond that necessary to establish a hostile work environment. Pa. State Police v. Suders, 542 U.S. 129, 134 (2004) (to establish a claim of constructive discharge, a plaintiff must show that the work environment "became so intolerable that [his] resignation qualified as a fitting response"); see also Serrano-Nova v. Banco Popular de P.R., Inc., 254 F. Supp. 2d 251, 263 (D.P.R. 2003) (Dominguez, J.) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002); Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992)) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.").

"[U]nder some circumstances, comments relating to an employee's age can contribute to the creation of an intolerable work environment (and thus support a claim of constructive discharge)." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 56 (1st Cir. 2000) (declining to find a constructive discharge despite employer's comments that the company needed "new blood" and employee's proposals were "tired"); see also Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 143 (1st Cir. 2012) ("It is settled that statements made by decisionmakers can evidence age discrimination . . . . "). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted); see also Suarez, 229 F.3d at 54 (noting that "the ordinary slings and arrows that workers routinely encounter in a hard, cold world" are insufficient to cause a constructive discharge). To establish that harassment was severe or pervasive enough to rise to the level of a hostile work environment, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Rios DaSilva v. One, Inc., 980 F. Supp. 2d 148, 161

(D.P.R. 2013) (Dominquez, J.) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Here, Carrero told Lopez-Rosario that "[he was] no longer useful as a handyman." (Docket No. 55-2 at pp. 6-7.)  This single statement fails to establish a hostile work environment, let alone a constructive discharge.  First, plaintiffs have failed to establish that this comment is in any way connected to plaintiff Lopez-Rosario's age.  See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 144 (1st Cir. 2012) (stating that employer's remarks were "arguably non-discriminatory" when they "did not allude to [employee's] actual age"); see also Gonzalez v. El Dia, Inc., 304 F.3d 63, 70 (1st Cir. 2002) (quoting Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) ("[A]mbiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent.")).  Plaintiffs have also failed to establish that this comment was especially severe or that it was one in a string of comments sufficiently pervasive to demonstrate that the harassment was "so intolerable that [plaintiff Lopez-Rosario's] resignation qualified as a fitting response."  See Pa. State Police, 542 U.S. at 134; see, e.g., Phillis v. Harrisburg Sch. Dist., 430 F. App'x 118, 122 (3d Cir. 2011) (holding employer's frequent comments, included stating that

employee's office had a "musty butt smell" indicative of older people, did not rise to the level necessary to support a claim of constructive discharge); Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 51 (1st Cir. 2008) (declining to find constructive discharge where employer noted that employee "lacked the same 'energy' he once had" and "used the term 'dinosaur' when describing [employee's] operations"); Rivera-Aponte v. Restaurant Metropol #3, Inc., 338 F.3d 9, 12 (1st Cir. 2003) (finding that employer calling older employees "corpses" and "imbeciles" constituted "stray workplace remarks" insufficient to establish discriminatory animus); Swidnicki v. Brunswick Corp., 23 F. Supp. 3d 921, 937 (E.D. Ill. 2014) (holding that twenty to thirty comments per day created a hostile work environment, but did not rise to the level of pervasiveness required for a finding that a constructive discharge occurred). Additionally, plaintiffs fail to establish that the remark was made at a time proximate to the adverse employment action. Gonzalez v. El Dia, Inc., 304 F.3d 63, 69-70 (1st Cir. 2002) (noting that failure to identify the time and context of allegedly ageist remarks weighed against a finding that the adverse employment action was connected to the remarks). Thus, Carrero's single remark is insufficient for a finding of constructive discharge.

### b.   The Grievance Process

Next, plaintiffs argue that the Programa's negative treatment of Lopez-Rosario during the grievance process in 2013-2014 constitutes constructive discharge.[11] (Docket No. 54 at pp. 10-14 (arguing that "[e]ach time Lopez[-Rosario] attempted to address the situation, by way of the Programa's own system for appeals [or grievances], he was rebuked."))

Following his notification that the Programa would be reducing his hours, plaintiff Lopez-Rosario and his attorney, Wendell Bonilla, sent a letter to Carrero requesting a meeting to discuss the matter. See Docket No. 73-40. Attorney Roxana Soto-Aguilu, replied to Attorney Bonilla's letter on behalf of the Programa and expressed the Programa's position that plaintiff Lopez-Rosario had failed to exhaust his administrative remedies. See Docket No. 73-41. Plaintiff Lopez-Rosario replied with a letter to Carrero and other Programa staff members expressing his disdain with the decrease in his working hours, see Docket No. 73-14, which the Programa considered a formal grievance to be addressed by the Grievance Committee of the Policy Council, see Docket No. 73-16. On August 14, 2013, Lopez-Rosario met with Carlos Perez, his direct supervisor and the Transportation and

---

[11] Plaintiffs do not, however, make a developed claim of retaliation pursuant to 29 U.S.C. § 623(d).

Facilities Area Coordinator.  See Docket No. 73-17.  Also on that date, the Grievance Committee met and discussed plaintiff Lopez-Rosario's grievance.  See Docket No. 73-21.

Following these meetings, the Grievance Committee denied Lopez-Rosario's grievance and sent him a letter outlining the actions required of him should he choose to appeal the Grievance Committee's denial.  (Docket Nos. 73-22; 60-3 at pp. 31-32.)  In response, Lopez-Rosario wrote a letter requesting a hearing with the Grievance Committee.  (Docket Nos. 73-42; 60-3 at pp. 38-39.)  Father Orlando Rosa, President of the board of directors, replied, reiterating that Lopez-Rosario had failed to exhaust the available remedies and that an appeal to the board of directors was time-barred.  (Docket No. 73-25.)  Upon further persistence by Lopez-Rosario, see Docket No. 73-43, Father Rosa agreed to meet with Lopez-Rosario and the board of directors' attorney at that time, Victor Soto, see Docket No. 73-26.  At the meeting, Father Rosa explained to Lopez-Rosario why his hours had been reduced.  Id. at p. 2.

In recounting this process, plaintiffs do not point to any specific hostile act or statement made in these letters and meetings.  No age-related comments were made in these letters or recorded in the minutes of these meetings.  Instead, plaintiff Lopez-Rosario sought an audience with the Programa's

senior personnel and was granted two meetings with key decision makers.  <u>See</u> Docket No. 73-21 (meeting with the Grievance Committee); Docket 73-26 (meeting with the president of the board of directors); <u>see also</u> <u>Lee-Crespo v. Schering-Plough Del Caribe Inc.</u>, 354 F.3d 34, 45-46 (1st Cir. 2003) (finding that management holding a meeting to address the issue undercut employee's claim that she was forced to leave).  Additionally, plaintiff Lopez-Rosario has not established that he was rebuked for actions taken during the grievance process.  <u>See</u> Docket No. 73-31 at pp. 2-17 (showing that plaintiff Lopez-Rosario's last formal warning was in 2012, before the Grievance Process began in 2013).  Although plaintiff Lopez-Rosario has not established that the Programa mistreated him during the grievance process, his actions in pursuing redress through the Programa's internal grievance process weigh somewhat in support of finding that a constructive discharge occurred.  <u>Hart v. Univ. Sys. of N.H.</u>, 938 F. Supp. 104, 109 (D.N.H. 1996).

### c.  Other Factors

In determining if a constructive discharge had occurred, the First Circuit Court of Appeals and the district courts within the first circuit have also considered several other factors, including assignment of humiliating or demeaning tasks, demotions or pay decreases, transfer to a distant city, inquiry

into plaintiff's retirement plans, effect of environment on plaintiff's work performance, suggestions and requests that employee resign, and threats of discharge.  Accord Serrano-Cruz v. DFI P.R., Inc., 109 F.3d 23, 26-28 (1st Cir. 1997); Greenberg v. Union Camp Corp., 48 F.3d 22, 26-29 (1st Cir. 1995); Scarborough v. Nestle Waters N. Am. Inc., Civ. No. 07-193, 2008 WL 4787573, *10-13 (D. Me. Oct. 30, 2008); Hart v. Univ. Sys. of N.H., 938 F. Supp. 104, 107-111 (D.N.H. 1996); Watlington v. Univ. of P.R., 751 F. Supp. 318, 327 (D.P.R. 1990) (Pieras, J.).

Here, in addition to being an independent adverse employment action, plaintiff Lopez-Rosario's reclassification, decrease in pay, and decrease in hours are considered as significant support for his constructive discharge claim.  See Docket Nos. 73-10, 73-11, 73-13; see also Watlington, 751 F. Supp. at 327 (finding a constructive discharge had occurred when plaintiff's pay was reduced significantly).  The fact that the reclassification did not relocate him to a distant location, however, weighs against finding a constructive discharge.  See Greenberg, 48 F.3d at 27-28.

Furthermore, this Court has found that an employer's offer of continued employment supports a finding that no constructive discharge occurred.  Rodriguez v. Sistema San Juan Capestrano, 939 F Supp. 2d 94, 103-04 (D.P.R. 2013) (Carreño-Coll,

Mag. J.).   The fact that the Programa never asked about his retirement plans, or requested that he resign, or threatened to discharge him weigh against finding a constructive discharge.   See Greenberg, 48 F.3d at 28-29; Hart, 938 F. Supp. at 108.   To the contrary, the Programa made him an offer of continued employment, albeit at the reduced allotment of hours.   See Docket Nos. 60-2 at p. 18; 60-35 at pp. 7-8; 44 at p. 22; 55 at p. 12.

Also, there is no evidence that the position to which plaintiff Lopez-Rosario was reclassified, driver, included any humiliating or demeaning tasks.   See Greenberg, 48 F.3d at 27.   The new position, rather, involved some of the tasks that were required in his original position of driver/handyman.

Finally, no evidence indicates that plaintiff Lopez-Rosario's work performance was affected by the environment at the Programa or the actions of Programa employees.   See Scarborough, 2008 WL 4787573 at *13.

Considering the cumulative effect of Carrero's comment the Programa's actions during the grievance process, and the other factors, the level of hostility does not rise to that required for a constructive discharge claim.   See Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)) ("Severity and pervasiveness are evaluated according to the totality of

circumstances . . . .”); <u>Chavera v. Victoria Indep. Sch. Dist.</u>,
221 F. Supp. 2d 741, 749 (S.D. Tex. 2002) (“[A] constructive
discharge claim, like a hostile work environment claim, is based
upon the cumulative effect of individual acts, that may not
themselves be actionable.”).   Thus, plaintiff has failed to set
forth sufficient facts to establish that the Programa’s actions
created working conditions that were so difficult that a reasonable
person would have been forced to resign.   Accordingly, the only
adverse employment action at issue here is the reduction in
plaintiff’s weekly hours and the accompanying decrease in pay and
position reclassification.

### 2.  Work Met Employer’s Legitimate Expectations

The Programa defendant’s concede for the sake of
argument that plaintiff Lopez-Rosario’s work met their legitimate
employment expectations.    (Docket No. 46 at pp. 15-16.)
Additionally, the Programa defendants do not argue that Lopez-
Rosario was fired “for cause,” such as poor performance or negative
employment actions.    <u>See generally</u> <u>id.</u>   Had the Programa
defendants not conceded this prong of the *prima facie* case,
plaintiffs’ properly supported facts would have been sufficient to
overcome defendants’ motion for summary judgment on this issue.

First, Lopez-Rosario worked for the Programa for
approximately twelve years and only received written warnings for

five instances during that time.   See Docket No. 73-31 at pp. 2-
17; see, e.g., Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779
F. 3d 19, 23-24 (1st Cir. 2015) (finding that seven years without
a formal, written complaint from employer is sufficient to
establish that employee met employer's legitimate expectations);
Melendez v. Autogermana, Inc., 622 F.3d 46, 51 (1st Cir. 2010)
(holding that ten years of employment with only one negative
performance review created triable issue of whether plaintiff met
employer's expectations); Velez v. Thermo King de P.R., Inc., 585
F.3d 441, 448 (1st Cir. 2009) (finding twenty-four years of
employment with no disciplinary infractions to be sufficient to
establish that plaintiff met employer's legitimate expectations);
see also Diaz-Figueroa v. Ricoh P.R., Inc., 661 F. Supp. 2d 140,
151 (D.P.R. 2009) (Pieras, J.) (noting that even if a plaintiff
demonstrates inconsistent performance and would face an "uphill
battle in seeking to convince a jury that her job performance was
satisfactory," defendant would still not be entitled to entry of
summary judgment).   Lopez-Rosario's last warning was in 2012 and
he continued working for the Programa until 2014.   See Docket Nos.
73-31 at pp. 2-7; 73-28.   These two years without reported incident
support that at the time Lopez-Rosario's employment ended, he was
meeting his employer's legitimate employment expectations.

Furthermore, the Programa offered plaintiff Lopez-Rosario an opportunity to continue his employment for the 2014-2015 fiscal year, demonstrating that it was satisfied with his performance sufficiently to retain him as an employee.  Thus, had the Programa defendants not conceded *arguendo* that plaintiff Lopez-Rosario met their legitimate employment expectations, plaintiffs would nonetheless be able to survive summary judgment on this prong.

### 3.   Neutral Treatment of Age

The fourth prong of the *prima facie* case of age discrimination requires a plaintiff to establish that "the employer did not treat age neutrally in taking the adverse action." Del Valle-Santana, 804 F.3d at 129-30 (citing Brennan, 150 F.3d at 26); Currier, 393 F.3d at 254. A plaintiff can satisfy the fourth prong of the *prima facie* case by showing "that [his] employer filled the position, thereby showing a continuing need for the services that he had been rendering," Melendez, 622 F.3d at 50, or that he was treated differently than similarly-situated, substantially-younger employees, Del Valle-Santana, 804 F.3d at 130-31; see also O'Connor, 517 U.S. 308 (1996); Costa Del Moral v. Servicios Legales de P.R., 63 F. Supp. 2d 165, 168-69 (D.P.R. 1999) (Casellas, J.) (discussing treatment of similarly situated applicants in analyzing whether age was treated neutrally).  The

plaintiff must establish, however, that the employees are similar
in "material respects."  Goncalves v. Plymouth Cty. Sheriff's
Dept., 659 F.3d 101, 106 (1st Cir. 2011) (quoting Perkins v.
Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)
("[A]pples should be compared to apples.")).  In evaluating
whether employees or applicants are similarly situated, the First
Circuit Court of Appeals has considered differences and
similarities in the employees work experience, technical skills,
test scores, interview performance, job title, disciplinary
record, and work-place conduct.  See Adamson v. Walgreens Co., 750
f.3d 73, 81-82 (1st Cir. 2014) (disciplinary record); Goncalves,
659 F.3d at 106-07 (work experience, technical skills, test scores,
interview performance); Rivera Aponte, 338 F.3d at 12 (work-place
conduct - physical altercation with co-worker); Lawrence v.
Northrop Corp., 980 F.2d 66, 72-73 (1st Cir. 1992) (job title -
associate program manager and program manager not similarly
situated).

      A plaintiff also must show that the similarly
situated employees were "significantly younger than [he]."  Del
Valle-Santana, 804 F.3d at 131 (citing O'Connor, 517 U.S. at 313
(requiring, for an inference of age discrimination, that the
similarly situated employee be "substantially younger" than the

plaintiff and disregarding whether the similarly situated employee
was over or under forty years of age)).

Here, plaintiffs fail to establish that the
Programa had a continuing need for the position or that Lopez-
Rosario was treated less favorably than two, allegedly similarly
situated employees, Muñoz and Ruiz.  First, although Lopez-Rosario
argues that the Programa had funds available to retain him due to
Muñoz's resignation, an increase in ARRA funds, and the closure of
the Maricao center, see Docket No. 54 at pp. 9-10, plaintiffs at
no point assert or support that the Programa still had need one or
more full-time driver/handymen or that it hired anyone to fill
that position after Lopez-Rosario's reduction in hours.  To the
contrary, the record shows that the Programa has not provided
transportation services to its participants since February 2014.
(Docket Nos. 60-35 at pp. 4-6, 10; 60-2 at p. 12.)

Next, plaintiffs introduce evidence regarding two
other employees that may be similarly situated to Lopez-Rosario.
(Docket Nos. 55-2 at p. 9; 55-3 at p. 3.)  Testimony about employee
Muñoz shows that he was similar in age to Lopez-Rosario and shared
the same job title, driver/handyman.  (Docket Nos. 55-2 at p. 9;
60-3 at p. 2.)  The record also indicated that his hours were
reduced to twenty per week at the same time that Lopez-Rosario's
hours were reduced.  See Docket Nos. 73-38; 73-39; cf. Marcano-

Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 252 (1st Cir. 2000) (stating that similarly situated employees outside of the protected class were not treated differently because all employees in the clerk position were reclassified at the same time). Thus, because Muñoz suffered a reduction in hours at approximately the same time that Lopez-Rosario did, he was not treated more favorably than Lopez-Rosario.

Plaintiffs also introduce evidence regarding employee Ruiz, who is younger than Lopez-Rosario. The Programa did not reduce the Ruiz's hours. (Docket No. 55-2 at p. 9.) This favorable treatment is irrelevant, however, because plaintiffs fail to establish that Ruiz and Lopez-Rosario were similarly situated or that Ruiz is substantially younger than Lopez Rosario.

To begin with, Ruiz occupied the position of handyman, not driver/handyman that Lopez-Rosario and Muñoz held. See Docket Nos. 73-35 at p. 1; 73-36 at p. 1; 55-5 at p. 8; cf. Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 144-45 (1st Cir. 2012) (considering identical job titles as a sign that employees were similarly situated). Although the handyman position shares some job requirements with the driver/handyman position; compare Docket No. 73-18, with Docket No. 73-19; the positions are listed separately in the Programa's job roster and differ on several tasks and responsibilities involved. See Docket

Nos. 44 at pp. 5-6; 55 at p. 3; 73-18; 73-19; see also Labiosa-Herrera v. P.R. Tel.Co., 153 F. Supp. 3d 541, 550-51 (D.P.R. 2016) (Besosa, J.) (quoting Russell v. Ohio, Dept. of Admin. Servs., 302 Fed. Appx. 386, 391-92 (6th Cir. 2008) (finding that plaintiff and identified employee were not similarly situated because they performed "distinctly different" duties)).

More dispositive than these factors is that plaintiffs have failed to include anything in the record to show that plaintiff Lopez-Rosario and Ruiz have similar performance levels or discipline records. Adamson, 750 F.3d 73, 82 (1st Cir. 2014) (finding plaintiff and other employees were not similarly situated when plaintiff had more complaints against him than did other employee); see also Rivera-Aponte, 338 F.3d 9, 12 (1st Cir. 2003) (finding plaintiff and other employees were not similarly situated when plaintiff's physical altercation was more severe than those of other employees). In Adamson, the plaintiff and the other employees were both given final written warnings in response to misconduct, but Adamson was fired following a second incident. 750 F.3d at 81. The First Circuit Court of Appeals found that Adamson was not similarly situated to the other employees because after he received a final written warning he had a second customer service incident, whereas the other employees had each only had one instance of misconduct. Id. at 81-82. Here, while the record

indicates that Lopez-Rosario has received written reprimand for five incidents, see Docket No. 73-31 at pp. 2-17, nothing in the record shows that Ruiz has had any disciplinary actions taken against him.

        Finally, plaintiffs have failed to establish that Ruiz is "significantly younger" than Lopez-Rosario.  The First Circuit Court of Appeals has not set a bright line rule as to age difference that constitutes "significantly younger," but has outlined that a three-year age difference is insignificant while a seven-year age difference is significant.  See Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000) (finding a three-year age difference between plaintiff and similarly situated employee was "too insignificant to support a prima facie case of age discrimination"); Velez, 585 F.3d 441, 444, 450 n.5 (finding age differences of seven, twenty, and twenty-eight years to be significant).  The First Circuit Court of Appeals has also held that a plaintiff's failure to provide the actual age of the plaintiff and the similarly situated employee precludes an inference that the similarly situated employee was "significantly younger" than plaintiff.  Del Valle-Santana, 804 F.3d at 131; see also Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 17 (1st Cir. 2001); Delanoy v. Aerotek, Inc., 614 F. Supp. 2d 200, 209 (D.P.R. 2009) (Dominguez, J.).  The First Circuit Court of Appeals in Del

Valle-Santana found plaintiff's failure to include the actual ages of the employees precluded "an inference of age discrimination" and ultimately demonstrated that the plaintiff "ha[d] failed to carry her [] burden to produce evidence supporting a *prima facie* case for age discrimination." Id. at 131.  Here, as in Del Valle-Santana, plaintiffs have failed to provide the other employee's, Ruiz's, actual age.  The Court, independently reviewing the record, was able to ascertain Lopez-Rosario's date of birth to be able to calculate that at the time of the reduction of hours in May 2013, Lopez-Rosario was fifty years old.  (Docket No. 60-3 at p. 2.)  Programa employee Lisette Ortiz-Ramos describes Ruiz as being "around his 40s" in age, (Docket No. 55-3 at p. 3), but gives no specific age.  Because plaintiffs failed to provide the actual age of the similarly situated employee, Ruiz, they have "failed to carry [their] burden to produce evidence supporting a *prima facie* case for age discrimination."  See  Del Valle-Santana, 804 F.3d at 131.[12]

---

[12] Had plaintiff provided Ruiz's actual age, the Court would then consider whether the age difference was significant or insignificant provided the three-to-seven year timeline established in Williams and Velez.  Williams, 220 F.3d at 20; Velez, 585 F.3d 441, 444, 450 n.5.

**B.   ADEA Conclusion**

Although Lopez-Rosario has established the first three prongs of the *prima facie* case of age discrimination – that he was over forty years of age when he suffered the adverse employment action of a reduction in hours despite meeting his employers expectations, he failed to satisfy the fourth prong.  Lopez-Rosario failed to show that the Programa did not treat age neutrally in reducing his hours because he failed to establish that the employer had a continued need for the service hours or that it treated other similarly situated employees differently than he.  Because Lopez-Rosario fails to meet his initial burden of establishing a *prima facie* case of age discrimination, the Court does not reach the plaintiffs' arguments regarding the defendants' legitimate nondiscriminatory reason.[13]  As a result, the Court **GRANTS** the Programa defendants' motion for summary judgment regarding plaintiff's ADEA claims, and those claims are **DISMISSED WITH PREJUDICE.**

---

[13] Defendant asserted, as a legitmate nondiscriminatory reason, that Lopez-Rosario's reduction in hours was caused by decreased federal funding, also known as a "sequester" of funds.  (Docket No. 46 at pp. 10-11.)

## III. Puerto Rico Law Claims[14]

### A.    Law 100 Claim

Puerto Rico Law 100 creates civil liability for "[a]ny employer who discharges, lays off or discriminates against an employee . . . because of his/her age . . . ." P.R. Laws Ann. tit. 29, § 146. "While Law 100 and the ADEA allocate the burdens of proof in different ways, "the burden of proof on the ultimate issue of discrimination remains with the plaintiff in both causes of action." Rivera Rodriguez v. Sears Roebuck De P.R., Inc., 432 F.3d 379, 383 n.2 (1st Cir. 2005) (internal citations and quotations omitted). "[T]he merits of the age-discrimination claims asserted under the ADEA and Law 100 are coterminous." Gonzalez v. El Dia, Inc., 304 F.3d 63, 73 n. 7 (1st Cir. 2002) (internal citation omitted)). To establish a *prima facie* case pursuant to Law 100, a plaintiff must 1) prove that "he was actually or constructively discharged, and 2) alleg[e] that the decision was discriminatory." Villeneuve v. Avon Prod., Inc., 111 F. Supp. 3d 112, 117 (D.P.R. 2015) (quoting Baralt v. Nationwide

---

[14] Although the Legislative Assembly of Puerto Rico recently passed the "Ley de Transformación y Flexibilidad Laboral," 2017 P.R. Laws 4, which affected several Puerto Rico labor laws including Law 80 and Law 100, Lopez-Rosario was employed by the Programa before this law was enacted, and thus its changes do not apply to him or his claims before this Court. See 2017 P.R. Laws 4 (Article 1.2).

Civil No. 14-1713 (FAB)                                    44

Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)).

        Here, as analyzed above, plaintiffs have failed to
establish that plaintiff Lopez-Rosario was actually or
constructively discharged.  See supra Part II(A)(1).  Therefore,
the Court **GRANTS** summary judgment to defendant Programa regarding
plaintiffs' Law 100 claims.  Plaintiffs' Law 100 claims are
**DISMISSED WITH PREJUDICE.**

   **B.   Law 80 Claims**

        Puerto Rico Law 80 states that "[e]very employee in
commerce, industry, or any other business or work place . . . in
which he/she works for compensation of any kind, contracted without
a fixed term, who is discharged from his/her employment without
just cause, shall be entitled to receive from his/her employer,"
the salary he/she earned, an indemnity payment, and a progressive
compensation payment.  P.R. Laws Ann. tit. 29, § 185a.  "Good
Cause" or "Just Cause" occurs when an employee exhibits improper
conduct, attitude, or performance or when an employer closes,
reduces, or reorganizes operations.  P.R. Laws Ann. tit. 29,
§ 185b.  Pursuant to Law 80, a plaintiff must "prove that he was
discharged and allege a lack of justification for it.  Ramos-
Santiago v. WHM Carib, LLC, Civ. No. 14-1087, 2017 WL 1025784, at
*5 (D.P.R. 2017) (Casellas, J.).

Defendants request that the Court dismiss all of plaintiffs' claims, including their Law 80 claims. (Docket No. 46 at p. 28 (requesting that the Court "enter summary judgment dismissing the instant case, in its entirety").) Because plaintiffs failed to establish that Lopez-Rosario was discharged, see supra Part II(A)(1), they have not met their initial burden pursuant to Law 80. The Court therefore **GRANTS** defendant's motion for summary judgment regarding plaintiffs' Law 80 claim. Thus, plaintiffs' Law 80 claims are **DISMISSED WITH PREJUDICE.**

### C.   Article 1802 Claim

Article 1802 of the Puerto Rico Civil Code, Puerto Rico's general tort statute, states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit 31, § 5141. Plaintiffs may not obtain recovery from damages pursuant to article 1802 if the conduct that forms the basis for their article 1802 claim is addressed expressly by specific labor or employment legislation. Franceschi-Vázquez v. CVS Pharmacy, 183 F. Supp. 3d 333, 344-45 (D.P.R. 2016) (Besosa, J.) (cataloguing cases). Because plaintiffs fail to allege, let alone support in the record,[15] negligent conduct aside from the conduct that is the

---

[15] Plaintiffs fail even to separate their claims or describe which facts support each claim. See Docket No. 1.

basis of their discrimination claims, see Docket No. 1, the Court **GRANTS** summary judgment on plaintiff Lopez-Rosario's article 1802 claims.   Plaintiff Lopez-Rosario's article 1802 claims are **DISMISSED WITH PREJUDICE.**

Article 1802 does allow derivative claims for family members.  Pursuant to article 1802, the Puerto Rico Supreme Court permits relatives of victims of discrimination in employment to bring damage claims seeking compensation for the harm that they suffered as a result of the discrimination endured by their relative, the employee.  See P.R. Laws Ann. tit. 31, § 5141; González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009) (citing Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 14 (1994)); Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 15–16 (1st Cir. 2012); Albite, 5 F. Supp. 3d at 198.  Because "a cause of action under Article 1802 'is wholly derivative . . . its viability is contingent upon the viability of the underlying employment discrimination claim.'"  Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2009) (quoting Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 12–13 (1st Cir. 2008)).  Thus, "if the principal plaintiff's claim fails, so too does the relative's derivative claim."  Gonzalez Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 320 (1st Cir. 2009) (citing Maldonado Rodríguez v. Banco Central Corp., 138 P.R. Dec. 268, 276 (1995)).

Here, plaintiffs' ADEA, Law 100, and Law 80 claims fail on substantive ground, therefore, the Court **GRANTS** summary judgment on plaintiffs' article 1802 claims derived from their ADEA, Law 100, and Law 80 claims and they are **DISMISSED WITH PREJUDICE.**

### CONCLUSION

For the reasons stated above, the Court **GRANTS** defendant Programa's motion for summary judgment, (Docket No. 46). Accordingly, plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

Judgment shall be entered DISMISSING this case with prejudice.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 29, 2017.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE